UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――――

VICTOR TAVAREZ,
                        Plaintiff,

          -v-

EXTRACT LABS, INC.,
                        Defendant.

21-CV-9916 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    Plaintiff Victor Tavarez, on behalf of himself and all those similarly situated, brought this putative class action under the Americans with Disabilities Act ("ADA") and New York City law against Defendant Extract Labs, Inc. Tavarez claims that Extract Labs' website is designed in a manner that is inaccessible to the visually impaired, contravening the ADA and New York City Human Rights Law. Extract Labs moves to dismiss under Federal Rule of Civil Procedure 12(b)(1), arguing that this case has become moot due to its compliance with best practices for ADA web accessibility. For the reasons that follow, Defendant's motion to dismiss is granted.

**I.    Background**

    **A.    Factual Background**[1]

    Plaintiff Victor Tavarez ("Tavarez" or "Plaintiff") is a visually impaired and legally blind person. (AC ¶ 1.) Defendant Extract Labs, Inc. ("Extract" or "Defendant") is an online seller of certain CBD and cannabinoid products whose website offers delivery to New York. (AC ¶ 20.) Plaintiff, while he was located in the Bronx, allegedly visited Defendant's website multiple times between August 2021 and May 2022 seeking to purchase certain cannabis-infused gummies.

―――――――――――――――――

[1] The following facts are taken from the first Amended Complaint and assumed as true for purposes of this motion except where otherwise noted. (ECF No. 18 ("AC").)

Due to the website's barriers to access for the visually impaired, Plaintiff alleges, he was never able to consummate a purchase. (*See* AC ¶¶ 12, 22, 24.)

Plaintiff brings this action against Defendant for designing its website, www.extractlabs.com (the "website"), in a manner that is not fully accessible to the class of visually impaired and/or legally blind individuals in the United States who, like Plaintiff, have sought to access it. (AC ¶ 1.) Specifically, Defendant has allegedly designed and maintained its website in a manner that is inaccessible to "Plaintiff and other blind or visually impaired people who use screen reading software." (*Id.*) According to Plaintiff, visually impaired individuals cannot use a computer without screen reading software, which converts visual online content, such as text, into audio. (AC ¶¶ 14 – 17.) However, for this software to function, websites must be designed in a manner that is "capable of being rendered into text." (AC ¶ 18.) Defendant's web design, by contrast, allegedly amounts to "a policy and practice to deny Plaintiff and the Class access . . . offered to the general public." (AC ¶ 21.)

### B. Procedural Background

Plaintiff commenced this action on November 24, 2021, and later filed his Amended Complaint on May 4, 2022, with the Court's permission. (*See* ECF No. 17; AC.) The Amended Complaint, using the same body of allegations and inferences, sought (1) injunctive relief under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* (the "ADA"); (2) further injunctive relief and money damages under the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq.* (the "NYCHLR"); and (3) declaratory relief. (AC ¶¶ 37 – 38, 46 – 47, 53 – 55.) The key to all three claims is the argument that Defendant's website violated version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1" or simply "WCAG"), a body of guidelines and best practices "promulgated to ensure that websites are accessible to blind and visually impaired people." (AC ¶ 19.)

Defendant moved to dismiss the Amended Complaint on June 8, 2022. (ECF No. 21.) Defendant argued that the Amended Complaint should be dismissed pursuant to Federal Rule 12(b)(1) for mootness, specifically arguing that in the time between the initiation of litigation and filing its 12(b) motion, Defendant had come into full compliance with all aspects of WCAG 2.1 and produced a supporting declaration representing this to be the case. (ECF No. 22 ("D. Memo.") at 7 – 11.) In opposition, Plaintiff argued that Defendant's motion required the Court to delve too deeply into factual issues at the 12(b) stage and sought to argue that Defendant was *not* in compliance with the WCAG, including their own declaration. (ECF No. 26 ("Pl. Opp.") at 8 – 11.) Defendant replied, producing further extrinsic evidence (another declaration) attesting to its WCAG compliance. (ECF No. 28 ("Reply") at 2 – 5.)

## II.     Legal Standard

District courts must "dismiss an otherwise sufficient complaint for lack of subject matter jurisdiction 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Diaz v. Kroger Co.*, 2019 WL 2357531, at *2 (S.D.N.Y. June 4, 2019) (Failla, J.) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). For a federal court to have subject matter jurisdiction, "an actual controversy must be extant at all stages of [its] review," and if "an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point in the litigation, [then] the action . . . must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 – 72 (2013). To survive a Rule 12(b)(1) motion, "a plaintiff must show by a preponderance of the evidence that subject matter jurisdiction lies over the dispute." *Diaz*, 2019 WL 2357531, at *2 (citing *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).

The Second Circuit recognizes that "a defendant is permitted to make a fact-based" Rule 12(b)(1) motion to dismiss, defined as a jurisdictional objection "proffering evidence beyond the

3

complaint and its exhibits" as a basis for dismissal. *Carter v. HealthPort Techs., LLC*, 882 F.3d 47, 56 – 57 (2d Cir. 2016) (cleaned up). To defeat a defendant's "fact-based" Rule 12(b)(1) motion, "plaintiffs must" either (1) "come forward with evidence of their own to controvert that presented by the defendant," or (2) "rely on allegations in the[ir] [p]leading," but only if the defendant's proffer fails to "contradict plausible allegations that are themselves sufficient to show standing." *Katz v. Donna Karan Co., LLC*, 872 F.3d 114, 119 (2d Cir. 2017).

### III.  Discussion

A "request for injunctive relief . . . under the ADA[] will only be deemed moot by a defendant's voluntary compliance with the statute if the defendant meets the 'formidable burden' of demonstrating that it is 'absolutely clear the alleged wrongful behavior could not reasonably be expected to recur.'" *Diaz*, 2019 WL 2357531, at *2 (quoting *Friends of Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 190 (2000)). Specifically, to moot an ADA website accessibility complaint based on the defendant's voluntary cessation, "the defendant [must] demonstrate that [i] there is no reasonable expectation that the alleged violation will recur and [ii] interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 110 (2d Cir. 2010).

Plaintiff first argues that Defendant's motion, which looks beyond the four corners of the Amended Complaint to extrinsic evidence, is inappropriate at this early stage in the litigation, relying on cases citing Federal Rule 12(b)(6). (Pl. Opp. at 8 – 9.) But courts do find that defendants have satisfied this "formidable burden" in ADA website accessibility cases if they produce an affidavit or declaration that has a sufficient "level of detail" and explains why and how the defendant has taken measures to ensure that its website is in full compliance with the WAGC best practices. *Diaz*, 2019 WL 2357531, at *3; *see also Guglielmo v. Nebraska Furniture Mart., Inc.*, 2020 WL 7480619, at *6 (S.D.N.Y. Dec. 18, 2020). In the bench opinion

4

that Plaintiffs submitted as relevant authority (*see* ECF No. 27-2), Judge Katherine Polk Failla surveyed recent authority and concluded that "courts in this district have found that [the defendant's] burden can be met by submitting affidavits and other evidence demonstrating that the defendant has altered the website to bring it into full and permanent compliance and has no intention of regressing back to inaccessibility." (ECF No. 27-2, at 14 (internal citations omitted).) Not just any submission will suffice. A defendant's submission of a mere "future plan for remediation of the [w]ebsite" or their "conclusory assertion that the [w]ebsite is today compliant with the ADA" is insufficient. *Diaz*, 2019 WL 2357531, at *3.

Here, Defendant's first declaration from Grant Rogers, the Director of Marketing at Extract who has supervisory authority over the website www.extractlabs.com, provided "a level of detail" that is sufficient to create a presumption of mootness. *Id.* This declaration is at least as detailed as others that have rendered an ADA website claim moot. Courts have found such an affidavit to be sufficient to establish mootness when it "attests that: (i) prior to the . . . litigation, Defendant had invested time and resources in improving the Website's accessibility; (ii) Defendant has . . . remedied each of the violations alleged by Plaintiff; and (iii) going forward, Defendant intends to commence a significant redesign of [its] Website, of which accessibility will be a central aspect." *Guglielmo*, 2020 WL 7480619, at *6.

In this case, all these factors are met. Defendant shows that it has completed a complete redesign of the website "specifically to meet Extract Labs' desire to comply with WCAG 2.1 and to make the website accessible to the visually impaired." (ECF No. 22-2 ¶ 15.) Moreover, in his first declaration, Rogers "(i) details the audit process that Defendant undertook to identify issues relating to Plaintiff's allegations; (ii) provides quantified examples of the audit's findings; (iii) observes that . . . few instances of the access barriers alleged by Plaintiff were actually identified;

and (iv) attests that . . . Defendant's employees resolved each of the identified issues" in the Amended Complaint.  *Guglielmo*, 2020 WL 7480619, at *6.  Rogers's first declaration also detailed participation by other Extract personnel, including the CEO, in remedial efforts as well as paying for a subscription which "continually monitors" WCAG developments and provides "24-hour automatic maintenance scans of new and updated content to be sure there are no accessibility issues for persons with its disabilities."  (ECF No. 22-2 ¶ 13.)  Extract has "hired an independent contractor and expert in WCAG 2.1 guidelines to remedy" any other emergent issues after auditing its new website.  (ECF No. 22-2 ¶ 18.)  Rogers "personally" confirmed that all the alleged accessibility deficiencies in the initial complaint — issues with screen-reading product descriptions; issues with reading images; issues with reading price information; and issues about using the website's "cart" — had "been remedied."  (ECF No. 22-2 ¶ 23.)

Plaintiff argues that this is not the end of the analysis because, under those same Southern District cases, plaintiffs retain an opportunity to produce their own evidence that keeps "the question of remediation open."  (ECF No. 27-2 at 15.)  Relying further on Judge Failla's bench opinion in *Sanchez v. Welcome Skateboards, Inc.*, Plaintiff specifically argues that, although Defendant's declaration provides "considerable detail explaining what . . . the problems were . . . and why they have been fixed," Plaintiff can survive dismissal if he "submits a declaration from his own expert witness . . . averring that [the expert] independently evaluated the website . . . and determined issues with the website do [still] exist and moreover, those issues are a barrier to individuals with low to no vision."  (ECF No. 27-2 at 15.)

Plaintiff argues that he has satisfied this burden because, in response to the first Rogers declaration, he "submitted . . . expert testimony that confirms the . . . access barriers . . . persist" in the form of "the Declaration of Robert D. Moody," apparently a retained expert "who

examined the Website." (Pl. Opp. at 9 – 11.) Robert Moody concluded that it was his "expert opinion and with a high degree of scientific certainty [that] the website [still] . . . has defects, . . . will continue to create problems for visually disabled persons, . . . and these defects act as a barrier to the effective use of the site for persons with low to no vision." (ECF No. 27-3 ¶ 14.)

Though the Court has the power to resolve an adversarial dispute like this on a Rule 12(b)(1) motion by making jurisdictional findings of "material and controverted" fact, *Carter*, 822 F.3d at 57, the Court need not wade into that fact-intensive inquiry. Evidentiary deficiencies with Plaintiff's submission of Moody's declarations compel the Court to grant Defendant's request to strike the Moody statements as unreliable and lacking foundation. (*See* Reply at 3.) Defendant made just a few responses to the Moody submission, and one response was:

> The Declaration of Robert D. Moody should be stricken as unreliable as Plaintiff failed to attach or provide a CV or other background information regarding Mr. Moody. . . . Furthermore, Plaintiff failed to attach the audit Mr. Moody references in his declaration. Therefore, there is no reliable evidence presented by Plaintiff to corroborate the opinion of Mr. Moody.

(*Id.*) Though Plaintiff's brief and Moody's own declaration refer to a report or an audit, on which his opinions are based, and an "attached" CV, neither was attached to or filed with Moody's declaration. (*Id.*) While Moody's declaration has brief conclusory statements about Moody's qualifications, these statements are lacking. *See* Fed. R. Civ. P. 26(a)(2) (threshold requirements to consider admissibility of expert testimony include, *inter alia*, submission of a "written report" that is "prepared and signed by the witness" and "the witness's qualifications").

Although Plaintiff did not have a right to file a sur-reply, he certainly could have requested leave to do so or filed a supplemental letter in response to Defendant's reply.[2] That

---

[2] Plaintiff could have moved for jurisdictional discovery. In a similar case, although the plaintiff had, as here, failed to rebut the affidavit on compliance, Judge Vernon S. Broderick still denied dismissal and granted the plaintiff's motion for "limited jurisdictional discovery" because

7

reply put Plaintiff on notice and moved to strike this evidence *nine months ago*. But, despite this, Plaintiff took no steps to cure the defects, amend their submissions, or otherwise even acknowledge Defendant had raised this procedural challenge. Moreover, as part of its reply, Defendant submitted yet another voluminous and time-intensive affidavit from Rogers rebutting any inference of non-compliance with the WCAG — and persuasively doing so — but without Plaintiff's expert's report and audit. Forcing Defendant to go through the lengthy process of briefing Rule 12(b)(1) dismissal yet again based on Plaintiff's counsel error would be unfair in that it would impose excess costs, delay, and inconvenience on Defendant.

Plaintiff seeks to distinguish its precedents from cases like *Diaz* and *Guglielmo* by reading the latter set of cases as granting dismissal on mootness grounds where an ADA website plaintiff allowed the defendant's "evidence of accessibility" to go "*uncontested*," distinguishing the present case because, via Moody's statements, Plaintiff was not allowing the evidence to go uncontested here. (Pl. Opp. at 11.) With Moody's operative evidence excluded, however, this is a distinction without a difference. Plaintiff fails to contest Defendant's extensive proffer on compliance, which means that the two Rogers declarations' "summary of Defendant's achievement to date do[] meet 'the stringent showing required by the Supreme Court's mootness precedents.'" *Guglielmo*, 2020 WL 7480619, at *6 (quoting *Diaz*, 2019 WL 2357541, at *5).

Plaintiff's cases do not contradict this. (*See* Pl. Opp. at 1, 5 – 6.) For example, in *Sanchez v. NutCo, Inc.*, a case in which the defendant produced an affidavit similar to to that of

---

the circumstances "required that the [plaintiff] be permitted discovery of facts demonstrating jurisdiction . . . where the facts are peculiarly within the knowledge of the opposing party." *Mercer v. Jerico Hotels*, *LLC*, 2019 WL 6117317, at *3 (S.D.N.Y. Nov. 18, 2019) (quoting *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)). But *Mercer* is distinguishable. Here, the missing information (qualifying and substantiating Moody) is peculiarly within Plaintiff's knowledge, and Plaintiff did not contend that he lacked access to facts sufficient to show that the case was not moot.

Rogers and the plaintiff responded with the same expert Plaintiff offered here, the court rejected NutCo's mootness argument because the plaintiff's submission *backed up* Moody's opinion by demonstrating Moody's investigative method, qualifications, and research in attachments to his declaration. 2022 WL 846896, at *3 (S.D.N.Y. March 22, 2022).  Here, however, the Court does not follow that course as it has no basis to infer Moody's method, qualifications, or anything else supporting his conclusory assertion that there are continuing access problems.

As the Court has dismissed Plaintiff's federal cause of action, it also declines to exercise continuing supplemental jurisdiction over any of Plaintiff's state law claims.  *See Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where federal claims are dismissed before trial, the state claims should be dismissed as well.").  The NYCHLR claim is dismissed without prejudice to refiling in state court.  The declaratory judgment claim is dismissed as moot.

### IV. Conclusion

For the foregoing reasons, Extract Labs, Inc.'s motion to dismiss is GRANTED.

The Clerk of Court is directed to close the motion at ECF No. 21 and to close this case.

SO ORDERED.

Dated: March 30, 2023
New York, New York

_____
J. PAUL OETKEN
United States District Judge